NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| S.R. and J.T. through her guardian ad litem, VIVIAN THORPE,<br><br>              Plaintiffs,<br><br>v.<br><br>CITY OF PATTERSON, MARIO FORMENTIA, RUSSELL CURVING, JOHN DOES, 1 through 10, individually and in their official capacity and ROBERT DOES 1 through 10, individually and in their official capacity,<br><br>              Defendants. | Civil Action No.: 12-3823 (JLL)<br><br>**OPINION** |

**LINARES,** District Judge.

Plaintiffs S.R. and J.T., through her guardian, allege that during an encounter with the City of Patterson Police, the above-named Defendants, among other wrongs, violated Plaintiffs' civil rights. (ECF No. 1, "Compl."). Currently before this Court is a Motion for Summary Judgment submitted by the City of Patterson and Patterson Police Officers Mario Formentia and Russell Curving (collectively, "Defendants"). (ECF No. 47, "Mot.").

Defendants' motion was filed on June 22, 2015. Per Local Rule 7.1(d)(2), Plaintiffs were given fourteen days to file their response. On July 10, 2015, Plaintiffs' counsel requested a thirty day extension of time to file an Opposition Brief. (ECF No. 48). This Court granted Plaintiffs' request, and ordered that Plaintiffs' Opposition was due no later than August 14, 2015. (ECF No. 49). On August 24, 2015, ten days after Plaintiffs' Opposition papers were due, Plaintiffs' counsel requested yet another thirty day extension of time to file Opposition papers. (ECF No. 50). On August 25, 2015, the Court granted Plaintiffs' request, but advised Plaintiffs that "[i]f no

1

opposition is filed within the thirty days this Court will treat the motion as unopposed." (ECF No. 51). To date, no Opposition has been submitted. Accordingly, this Court will treat Defendants' Motion for Summary Judgment as unopposed. See Fed. R. Civ. P. 56(e).

## LEGAL STANDARD

At the outset, the Court notes that a motion for summary judgment cannot be granted by default. *See, e.g., Lorenzo v. Griffith,* 12 F.3d 23, 28 (3d Cir. 1993) ("[I]n addition to a finding that a party failed to respond [to the motion for summary judgment], there must be a congruent finding that judgment for the moving party is appropriate as a matter of law."). Thus "[a] district court 'cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but rather, must consider the merits of the motion.'" *Robinson v. New Jersey Mercer County Vicinage—Family Div.*, 562 Fed. Appx. 145, 149 (3d Cir. 2014) (unpublished) (quoting *United States v. One Piece of Real Prop.*, 363 F.3d 1099, 1101 (11th Cir. 2004)).

Specifically, the Court must be satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(e). "A 'genuine' issue is one where a reasonable jury, based on the evidence presented, could hold in the movant's favor with regard to that issue." *Schoonejongen v. Curtis-Wright Corp.*, 143 F.3d 120, 129 (3d Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). The default rule is that all evidence considered in a summary judgment motion must be reviewed and all inferences drawn therefrom must be in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, where, as here, the motion is unopposed, a court will view the underlying facts and law as set forth by the moving party as undisputed. *See Anchorage Assocs. V. Virgin Islands Bd. of Tax Rev.*, 922 F.2d 168, 175 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e). Accordingly, this Court adopts the

2

Statement of Uncontested Material Facts, submitted by Defendants pursuant to Local Rule 56.1. (Mot. at 1-11).

## BACKGROUND

Plaintiffs' Complaint arises from an October 8, 2007 encounter between Plaintiffs and officers of the City of Patterson, New Jersey Police Department. (Compl. at 2). On said date, Plaintiffs, at the time two female minors, were exiting an apartment building in which Plaintiff S.R. resided with her family in the City of Patterson. (Mot. at ¶ 1). About the same time that Plaintiffs were exiting the building, Defendant police officers, "responding to a call on a description of a suspected drug dealer that had just engaged in hand-to-hand drug transaction" in the vicinity of the apartment, pulled up in vehicles alongside the curb across the street from the apartment building. (Id. at ¶ 2).

Upon seeing the vehicles, Plaintiffs decided to return to the apartment building because the area "is known as an area of criminal activity and they were concerned." (Id. at ¶ 7). While J.T. testified that she was unaware at the time that the vehicles were police vehicles, S.R. testified that she knew the vehicles to be police cars. (Id. at ¶ 6). As Plaintiffs were entering the building, Defendant Formentia "noticed that one of the plaintiffs . . . possibly fit the description of the suspected drug dealer that the police were seeking." (Id. at ¶ 8). Accordingly, Defendant Formentia followed Plaintiffs into the apartment building, kicking open the front door. (Id. at ¶ 11). Thereafter, Defendant Curving followed suit, and Plaintiffs testified that the Officers gave chase up the stairwell. (Id. at ¶ 12). Plaintiff J.T. testified that one of the Officers had his gun drawn while she was proceeding up the stairs, albeit not pointed directing at her. (Id. at ¶ 15). After J.T. had reached her family's apartment, Defendant Formentia kicked the apartment door open, with his service weapon drawn. (Id. at ¶¶ 17-18). Officer Formentia holstered his weapon

3

upon realizing that there was no threat in the apartment (Id. at ¶ 20) and informed Vickie Thorpe, J.T.'s aunt, that he was a Patterson Police Officer and that J.T. needed to come with him. (Id. at 5). Plaintiff J.T. testified that Officer Formentia grabbed her by the arm and played "tug of war" in an attempt to separate J.T. from her aunt. (Id. at ¶ 23). Thereafter, J.T. accompanied Officer Formentia to the first floor of the apartment complex. (Id. at ¶ 24).

At the same time the above events were occurring in the apartment, Defendant Curving was on the stairwell with Plaintiff S.R. (Id. at ¶ 26). S.R. testified that while on the stairwell, Defendant Curving searched her and conducted a pat-down (Id. at ¶ 30), allegations which Officer Curving denies. (Id. at 6). S.R. also testified that after the alleged pat-down, Officer Curving took her across the street and made her stand against a building with her hands on the wall. (Id. at ¶ 31). S.R. testified that Officer Curving did not touch her aside from the alleged pat-down on the staircase. (Id. at ¶ 33). The entire encounter terminated when J.T.'s father, an employee of the Patterson Police Department, arrived on the scene, at which time the Plaintiffs allegedly returned to the apartment building. (Id. at ¶¶ 41-42).

Plaintiffs have conceded that at no time during the events of October 8, 2007, were they arrested, handcuffed, or physically injured by the Defendants' actions. (Id. at ¶¶ 28-40). Plaintiffs do allege, however, that they suffered and continue to suffer emotional distress on account of the incident. (Id. at ¶ 43). In support of these allegations Plaintiffs produced the report of psychiatrist Dr. James R. Cowan, Jr., who met with both Plaintiffs shortly after the incident, and concluded that both were suffering from post-traumatic stress disorder. (Id. at ¶¶ 44-46). Although the psychiatrist recommended the Plaintiffs continue with outpatient counseling, J.T. recalled seeing Dr. Cowan approximately twice, and S.R. saw Dr. Cowan for three or four sessions, but

4

discontinued because, according to the testimony of her mother, Vickie Thorpe, S.R. "said she was fine." (Ibid.).

## DISCUSSION

Plaintiffs sets forth eighteen counts against Defendants for violation of Plaintiffs' Civil Rights pursuant to 42 U.S.C. §§ 1983, 1985 and 1986 and the New Jersey Civil Rights Act of 2004 ("NJCRA"), and also allege state law causes of action for negligence, respondeat superior liability, assault and battery, negligent and intentional infliction of emotional distress, and false arrest and detention. These claims are premised upon Plaintiffs' allegation of inappropriate conduct and excessive force used during the encounter discussed above.

### A. Plaintiffs have Not Proffered Sufficient Evidence to Show a Violation of Their Civil Rights

In order to prove a claim for excessive force under the Fourth Amendment, a plaintiff must "show that a seizure occurred and that it was unreasonable." *Curley v. Klem*, 298 F.3d 271, 270 (3d Cir. 2002). The reasonableness of an officers' conduct in effectuating the seizure is to be judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1968)).

Here, Plaintiffs have not provided evidence through which a reasonable jury could find that Defendants used excessive force or subjected Plaintiffs to an unreasonable seizure without probable cause in violation of Plaintiffs' Fourth Amendment rights. Indeed, Plaintiffs have conceded that they were never handcuffed or arrested and were not physically injured during the encounter. (Id. at ¶¶ 28-40). Moreover, given that the Defendants were responding to a call regarding a suspected drug dealer in the area, who was thought to match the description of one of the Plaintiffs, and provided that the Defendants witnessed the Plaintiffs retreating into the

5

apartment building immediately upon their arrival, the Police Officers' subsequent interaction with the Plaintiffs cannot be said to be unreasonable.

Even if Plaintiffs could have shown that their rights were violated, this Court finds that the individual officers would be protected from allegations of civil rights violations by the defense of qualified immunity. This defense "protects all officers 'but the plainly incompetent ones or those who knowingly violate the law.'" *Connor v. Powell*, 162 N.J. 396, 409 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). The doctrine "balances the interest in allowing public officials to perform their discretionary functions without fear of suit against the public's interest in vindicating important federal rights." *Ryan v. Burlington County, N.J.*, 889 F.3d 1286, 1292 (3d Cir. 1989). The defense also applies to bar suit on claims brought under the New Jersey Civil Rights Act. *Morillo v. Torres*, 222 N.J. 104 (2015) (holding that officers were entitled to qualified immunity for NJCRA and § 1983 violations).

A plaintiff may overcome the qualified immunity defense "if an official *knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], *or if he took the action with the malicious intention* to cause a deprivation of constitutional rights or other injury." *Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982) (quotations omitted) (emphasis in original). Stated differently, if the Officers could have reasonably believed that their actions were lawful given the circumstances, the officers are entitled to qualified immunity. *Ryan*, 889 F.2d at 1292.

Here, Defendants have appropriately invoked the qualified immunity defense where their actions towards both Plaintiffs were reasonable in light of the circumstances and where Plaintiffs have not shown that Defendants acted with malice toward Plaintiffs. The Defendants contend that:

> Based on the information available to the officers, and the fact that the plaintiffs fled when the police cars arrived, it was more than reasonable for the officers to believe that the

6

> plaintiffs had engaged in criminal activity, were armed, and were fleeing to avoid prosecution. Thus, even if a pat down search were conducted (which is vehemently denied by the defendants); a pat down under these circumstances was reasonable and necessary to protect Officer Curving, and the surrounding public, from the threat of imminent harm.

(Mot. at 6). This Court agrees that the Defendants acted reasonably in light of the circumstances.

For the above reasons, the civil rights claims against Defendant Officers, specifically Plaintiffs' allegations under 42 U.S.C. § 1983, 1985, and 1986 and the NJCRA, are hereby dismissed. *See Williams v. New Jersey Division of State Police*, 10-cv-3478, 2012 WL 19000602, *15 (D.N.J. May 24, 2012) (holding that the defense of qualified immunity applies to claims brought under the New Jersey Civil Rights Act).

As this Court finds that Plaintiffs have not put forth sufficient evidence such that a reasonable jury could find that Defendants have violated Plaintiffs' civil rights, all civil rights claims alleged against the City of Patterson are likewise dismissed.[1]

### A. Plaintiffs' State Law Claims are Barred by the Verbal Threshold Set Forth in the Tort Claims Act

Plaintiffs assert the following tort claims against the defendants: (1) assault and battery (Count VI and VII); (2) intentional and negligent infliction of emotional distress (Counts VIII and IV); (3) respondeat superior liability (Counts X and XI); (4) negligence (Counts XII-XIV and XVI-XVIII), and; (5) false arrest and false imprisonment (Count XV). To the extent these claims are not otherwise resolved by this Court's finding that Plaintiffs have failed to satisfy their evidentiary obligations as to their civil rights claims, Plaintiffs' state law claims are dismissed on account of their failure to meet the State's verbal threshold required for suits brought against a public entity

---

[1] Because the Court has found that Plaintiffs have offered insufficient evidence tending to show that Plaintiffs' civil rights were violated, it need not reach the issue of Plaintiffs' claims of *Monell* liability as against the City. (See Compl. at 4); *see also Monell v. Dep't of Social Services of New York*, 436 U.S. 658 (1978).

7

or public employees by showing, through discovery or otherwise, "a permanent loss of the use of a bodily function that is substantial." *Brooks v. Odom*, 150 N.J. 395, 406 (1997).

The New Jersey Tort Claims Act permits a plaintiff to seek relief for certain common law torts against a public entity or public employee. See N.J.S.A. § 59:1-2. However, a Plaintiff may not recover noneconomic damages for claims brought under the Act unless she has "sustain[ed] a permanent loss of the use of a bodily function that is substantial." *Brooks v. Odom*, 150 N.J. 395, 406 (1997). This "verbal threshold" requirement specifically provides that:

> No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00. . . .

N.J.S.A. 59:9-2(d); *see also Delacruz v. Borough of Hillside*, 183 N.J. 149, 164 (2005) (barring Plaintiff's false arrest and false imprisonment claims where he failed to meet this verbal threshold requirement).

Indeed, as Defendants point out, both Plaintiffs admitted at deposition that they were *not* physically injured during the police encounter. (Mot. at 13). Additionally, Plaintiffs have not alleged that their medical bills on account of the alleged emotional trauma they suffer exceeds $3,600.00. Accordingly, because Plaintiffs have failed to satisfy this threshold showing of a serious injury that would permit them to file a tort claim against the City of Patterson or its Officers under the New Jersey Tort Claims Act, Plaintiffs' state law claims as against all Defendants are hereby dismissed.

## CONCLUSION

For the above reasons, Defendants' Motion for Summary Judgment is hereby granted. An appropriate Order accompanies this Opinion.

**IT IS SO ORDERED.**

DATED: October 19th, 2015

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE